## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| JONATHAN ELLINGTON TAYLOR, | : | Case No. 1:18-cv-224 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| SELECTION MANAGEMENT | : | |
| SYSTEMS, INC., | : | |
| | : | |
| Defendant. | | |

## ORDER GRANTING SUMMARY JUDGMENT TO DEFENDANT (Doc. 14) AND GRANTING IN PART SANCTIONS (Doc. 17)

This civil case is before the Court on Defendant Selection Management Systems Inc.'s motion for summary judgment (Doc. 14) and the parties' responsive memoranda (Docs. 15, 16). Also before the Court is Defendant's motion for sanctions and to compel documents pursuant to Rule 45 of the Federal Rules of Civil Procedure (Doc. 17), and the parties' responsive memoranda (Docs. 20, 22).

## I.    BACKGROUND[1]

### A.    Procedural Posture

On April 2, 2018, Plaintiff Jonathan Taylor filed suit against Selection Management Systems, Inc. d/b/a Selection.com ("Selection") for violations of the Fair

---

[1] Pursuant to the Court's Standing Order, each party filed a Statement of Proposed Undisputed Facts, as well as a Response to Proposed Statement of Undisputed Facts and a Statement of Disputed Issues of Material Fact. (Docs. 14-1, 15-1). The Court's statement of facts set forth in this Order incorporates the material facts undisputed by the parties.

Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (Doc. 1). Mr. Taylor specifically

alleged violations under § 1681e(b) and § 1681k.

At the conclusion of discovery, Selection filed its motion for summary judgment

requesting judgment as a matter of law on all claims. (Doc. 14). Selection also seeks

sanctions and a motion to compel documents pursuant to a subpoena issued to Mr.

Taylor's mother. (Doc. 17). Both motions are now ripe for review.

### B.     Undisputed Material Facts

#### a.     Plaintiff's background check

Selection is a consumer reporting agency that will provide background checks for

employment purposes. (Doc. 14-1 at ¶ 1). On April 6, 2016, Mr. Taylor received an

employment offer letter from Total Quality Logistics ("TQL") pending completion of a

background check. (*Id*. at ¶¶ 19–20). The letter anticipated a start date of April 25, 2016.

(*Id*. at ¶ 22). TQL hired Selection to conduct Mr. Taylor's consumer report. (*Id*. at ¶ 21).

On April 7, 2016, TQL was able to view at least part of Mr. Taylor's consumer

report, showing a criminal conviction in Warren County, Ohio. (*Id*. at ¶ 23). TQL

requested additional information from Selection on the conviction. (*Id*., Ex. 1c; Doc. 15-

1, Ex. A). On April 11, 2016, Selection provided its consumer report to TQL, and Mr.

Taylor received notice from Selection that public information was being reported about

him for employment purposes. (Doc. 14-1 at ¶ 24). The report included a 2009 felony

criminal conviction from Warren County for drug trafficking and possession. (*Id*. at

¶ 25). The felony conviction does not belong to Mr. Taylor. (*Id*. at ¶ 27).

On April 13, 2016, Mr. Taylor requested a copy of his report from Selection. (*Id*. at ¶ 31). Mr. Taylor received electronic access to his report on April 14, 2016. (*Id*.) Mr. Taylor has encountered incorrect consumer reports about him in the past.[2] (*Id*. at ¶ 28). Mr. Taylor did not notify TQL or Selection of the inaccurate report, and he and TQL did not discuss the criminal conviction on the report. (*Id*. at ¶ 32). Mr. Taylor started working with TQL at some point between April 25 and early May 2016. (*Id*. at ¶¶ 33–34).[3] Mr. Taylor was terminated by TQL on November 19, 2016 for reasons unrelated to the background check. (*Id*. at ¶ 36).

Selection first became aware of the incorrect report on February 9, 2017 after notice from Mr. Taylor on that day. (*Id*. at ¶ 38). Following Mr. Taylor's dispute notification, Selection conducted a reinvestigation, correcting Mr. Taylor's report on February 10, 2017. (*Id*. at ¶¶ 38–40). On April 2, 2018, Mr. Taylor filed this action against Selection. (*Id*. at ¶ 41).

---

[2] Mr. Taylor admits this statement is true, but objects only to the statement's relevancy and materiality to the lawsuit. According to Fed. R. Evid. 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The "standard for relevancy under Rule 401 is 'extremely liberal.'" *Ayers v. City of Cleveland*,773 F.3d 161, 169 (6th Cir. 2014) (citing *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009)). Mr. Taylor's past lawsuits are relevant to his claims and Selection's defenses; however, the past lawsuits are not dispositive to the Court's ruling on summary judgment.

[3] The parties dispute Mr. Taylor's exact start date; however, the exact date is immaterial as Mr. Taylor admits he is not seeking damages for lost wages or financial hardship caused by delayed employment. (Doc. 15-1, Sec. I at ¶¶ 33–34).

### b.    Selection's Internal Processes

Selection maintains a FCRA Compliance Manual which describes its processes and procedures for furnishing consumer reports.[4]  (*Id*. at ¶ 2).  If a consumer report contains public record information likely to have an adverse impact on the consumer's ability to obtain employment, Selection requires notice to be sent to the consumer at the time the consumer report is issued to the user.  (*Id*. at ¶ 3).  Selection trains its employees pursuant to the manual and conducts quarterly audits of its employees' work.  (*Id*. at ¶ 6).

When an employee is searching criminal records, Selection requires each criminal record to be verified by two identifies, including name, date of birth, address, driver's license, and social security number.  (*Id*. at ¶ 9).  The employee must also include a case number, file date, disposition date, statement of charge, and disposition of the criminal case.  (*Id*. at ¶ 10).  The employee must contact the court if any of the information cannot be verified.  (*Id*. at ¶ 11).  If the criminal record cannot be verified with a reasonable degree of certainty, it is excluded from the report.  (*Id*. at ¶ 13).

If a consumer disputes information contained in his/her report, Selection conducts a reinvestigation.  (*Id*. at ¶ 14).  Selection also notifies the consumer report user that it is reinvestigating the report.  (*Id*. at ¶ 15).

## II.  STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to

---

[4] Mr. Taylor does not dispute the contents of Selection's Compliance Manual or that the document speaks for itself, but argues the manual is immaterial to or was not followed in this case.  (*See generally* Doc. 15-1 at 1–8).  For the purposes of this motion, the Court will only consider the undisputed contents of the Compliance Manual.

the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

## II. ANALYSIS

Mr. Taylor asserts Selection violated both § 1681e(b) and § 1681k of the FCRA. Under § 1681e(b), Mr. Taylor claims Selection willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy when preparing its consumer report, causing injury in the form of harm to reputation and emotional distress. (Doc. 1 at ¶ 20). Under § 1681k, Mr. Taylor claims Selection willfully and/or negligently failed to provide him with "contemporaneous notice" that public record information was being reported about him, also causing injury in the form of harm to reputation and emotional distress. (*Id*. at ¶ 20). For these violations, Mr. Taylor seeks statutory, actual, and punitive damages under § 1681n and § 1681o. (*Id*. at ¶ 23).

5

## A.    Standing

As an initial matter, Selection argues Mr. Taylor lacks standing to bring both his § 1681e(b) and § 1681k claims.  The Court agrees.

Federal courts are vested with jurisdiction to address "actual cases and controversies."  *Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004) (citing U.S. CONST. art III, § 2).  The doctrine is an evolving body of law with its "core component" being "the case-or-controversy requirement of Article III," but "some of its elements express merely prudential considerations that are part of judicial self-government."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992).  "The doctrine of standing, which is derived from Article III, requires a plaintiff to have a 'personal stake in the outcome of the controversy.'"  *Foster v. Health Recovery Servs., Inc.*, No. 2:19-CV-4453, 2020 WL 5943021, at *3 (S.D. Ohio Oct. 7, 2020) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

To satisfy standing, the Supreme Court requires a plaintiff to have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  "At summary judgment, the current stage of this litigation, [Mr. Taylor] cannot rely on allegations alone but must set forth evidence demonstrating his standing."  *Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 462 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 1117 (2020).  However, the Court is mindful that establishing the elements of a cause of action are not the same as satisfying standing – "One is failure of proof.  The other is a failure of jurisdiction."  *Id.* at 458.

First, "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo*, 136 S. Ct. at 1548 (citing *Lujan*, 504 U.S. at 560).  "For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way."  *Id*. at 1548 (quotation and citations omitted).  "A "concrete" injury must be "*de facto*"; that is, it must actually exist."  *Id*. (citing BLACK'S LAW DICTIONARY (9th ed. 2009)).

Mr. Taylor fails to establish a concrete injury.  Mr. Taylor's claimed injuries for both FCRA violations are for harm to reputation and emotional distress.  It is true the Sixth Circuit recognizes a plaintiff may be able to recover emotional distress damages for FCRA claims.  *See, e.g., Bach v. First Union Nat. Bank*, 149 F. App'x 354, 362 (6th Cir. 2005) ("Actual damages for a FCRA violation may include humiliation and mental distress.").  However, the Sixth Circuit also imposes a strict standard for recoverability of emotional distress given the ease of manufacturing emotional distress damages.  *See Garrett v. Trans Union, L.L.C.*, No. 2:04-CV-00582, 2006 WL 2850499, at *11 (S.D. Ohio Sept. 29, 2006).  Mr. Taylor must also provide more than mere conclusory statements of his emotional distress and harm to reputation.  *Id*.  *See also Bach*, 149 Fed. App'x. at 361 ("An injured person's testimony alone may suffice to establish damages for emotional distress provided that she reasonably and sufficiently explains the circumstances surrounding the injury and does not rely on mere conclusory statements.").

Here, Mr. Taylor provides no more than conclusory statements that he suffered emotional distress and harm to reputation.  He provides no affidavit, declaration, expert

testimony, or evidence of treatment sought for his emotional distress or harm to reputation. At most, Mr. Taylor points to statements in his and his wife's depositions which generally state that he was worried or stressed about the delay in starting his new job with TQL. (Doc. 14-1, Ex. 2, Taylor Dep. 84:21, 119:12-121:7; Doc. 14-1, Ex. 2, Anebri Dep. 33:22:35:2). Further, Mr. Taylor contradicts this testimony when he testified that he felt his job with TQL was secure and when he admitted that he is not seeking any lost wage damages because his employment and wages from TQL were not delayed. (Doc. 14-1, Ex. 2, Taylor Dep. 87:16-18; Doc. 14-2, Ex. 1).

Mr. Taylor also points to no specific examples of emotional distress or harm to reputation caused by the incorrect criminal report or the alleged delay in receiving notice that the report was being sent to TQL, nor has the Court found any when reviewing the evidentiary materials provided by the parties. Accordingly, Mr. Taylor does not reasonably and sufficiently explain the circumstances surrounding his purported emotional distress or harm to reputation. The lack of any evidence substantiating Mr. Taylor's emotional distress leads this Court to conclude that Mr. Taylor fails to establish a *de facto* injury. *See, e.g., Thompson v. Equifax Info. Servs., LLC*, 441 F. Supp. 3d 533, 543 (E.D. Mich. 2020) (plaintiff lacked standing based on conclusory statements of emotional stress for FCRA violation). *Cf. Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604, 611 (6th Cir. 2016) (extensive testimony of plaintiff's emotional well-being, coupled with specific examples of harassment and financial hardship caused by incorrect criminal background report supported jury award for emotional distress damages).

Regarding Mr. Taylor's § 1681k claim, Mr. Taylor also contends he has standing solely because Selection violated the statute. But, as the Sixth Circuit states, "there is no such thing as an 'anything-hurts-so-long-as-Congress-says-it-hurts theory of Article III injury.'" *Huff*, 923 F.3d 463 (quoting *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018)). A "bare procedural violation, divorced from any concrete harm" cannot satisfy the injury-in-fact requirement of standing. *Spokeo*, 136 S. Ct. at 1549; *see also Lyshe v. Levy*, 854 F.3d 855, 859 (6th Cir. 2017) ("This circuit has had the occasion to interpret *Spokeo* and has concluded that a statutory violation in and of itself is insufficient to establish standing.")

It is undisputed that Selection provided notice to Mr. Taylor in accordance with § 1681k on April 11, 2016 – the same day TQL received the full report. (Doc. 14-1 at ¶ 24). Mr. Taylor's § 1681k claim rests on whether, under § 1681k, Selection was required to give notice when TQL could start viewing information gathered about Mr. Taylor on April 7, but before the report was complete. The Court discusses the merits of this claim, *infra*. Even so, this four-day delay is at most a bare procedural violation divorced of any harm because Mr. Taylor cannot establish a *de facto* injury for his alleged emotional distress and harm to reputation.

Accordingly, Mr. Taylor fails to satisfy the injury-in-fact requirement and lacks standing to bring his FCRA claims. However, Mr. Taylor's claims also fail as a matter of law, which the Court will next discuss.

### B.     FCRA Claims

Notwithstanding Mr. Taylor's standing issues, his claims fail as a matter of law. The FCRA allows for private causes of action by individuals damaged by violations of the FCRA.  15 U.S.C. §§ 1681n, 1681o.  "The FCRA does not impose strict liability for incorrect information." *Nelski v. Trans Union, LLC*, 86 Fed. App'x. 840, 844 (6th Cir. 2004).  Instead, a consumer may seek actual damages for negligent violations, § 1681o, and actual and punitive damages for willful violations, § 1681n.

To succeed on a negligent violation, the plaintiff must establish actual damages and causation. *See, e.g., Kaplan v. Experian, Inc.*, No. 09-10047, 2010 WL 2163824, at *3 (E.D. Mich. May 26, 2010) (citing *Casella v. Equifax Credit Info. Srvs.*, 56 F.3d 469, 474–75 (2d Cir.1995) (affirming summary judgment because of lack of causation between harm alleged by the plaintiff and the alleged violation of the Act).  To succeed on a willful violation, the plaintiff must also establish conduct that "is not only a violation under a reasonable reading of the statute's terms, but show that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.  This requires a finding that the Defendant's conduct was objectively unreasonable." *Black v. Gen. Info. Sols. LLC*, No. 1:15 CV 1731, 2018 WL 1070868, at *10 (N.D. Ohio Feb. 26, 2018) (citing *Safeco*, 551 U.S. at 69–70).  "[A] single inaccuracy, without more, does not constitute a willful violation of the FCRA." *Smith*, 837 F.3d at 611.

In this case, Mr. Taylor alleges Selection both negligently and willfully violated the FCRA for compliance procedures, § 1681e(b), and using public records for

employment purposes, § 1681k. The Court finds each fails as a matter of law and will take each in turn.

### 1. Section 1681e(b)

The FCRA requires that:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b).

"To state a claim under § 1681e(b) a plaintiff must show that '(1) the defendant reported inaccurate information about the plaintiff; (2) the defendant either negligently or willfully failed to follow reasonable procedures to assure maximum possible accuracy of the information about the plaintiff; (3) the plaintiff was injured; and (4) the defendant's conduct was the proximate cause of the plaintiff's injury.'" *Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 941 (6th Cir. 2020) (citing *Nelski*, 86 F. App'x at 844).

As both parties argue, *Smith* provides guidance in this case. *Smith*, 837 F.3d at 611. In *Smith*, plaintiff David Smith applied for a job but was rejected because the consumer report provided to the potential employer included inaccurate criminal background. *Id*. at 607. Mr. Smith promptly contacted the consumer reporting agency to dispute the finding, and it took six weeks for the report to be corrected and for Mr. Smith to begin working with the employer. *Id*. at 607. Mr. Smith sought lost wages and emotional distress damages. *Id*. He provided testimony of himself and his wife on his mood for the six weeks, the strain of being unemployed burdening the couple's already

unsteady financial situation, and a member in the community calling Mr. Smith his "favorite felon."  *Id*.  The Sixth Circuit concluded the record was extensive, particularly given the financial hardships caused by his delay in employment, to support his emotional distress injuries.  *Id*. at 611.  Thus, an award for emotional distress was warranted.  *Id*.

This is not the case of *Smith* – Mr. Taylor cannot establish his injury, his actual damages resulting from a violation of the FCRA.   As previously discussed, Mr. Taylor asserts only emotional distress and harm to reputation injuries and does not sufficiently evidence the circumstances surrounding those injuries.  Unlike the plaintiff in *Smith* that testified to six-weeks of delayed employed, the financial strain caused by the delay, and specific examples of harassment caused by the incorrect consumer report, Mr. Taylor does little more than assert conclusory statements that he was "worried, upset, moody, and angry."  (Doc. 15 at 3).  His employment was not delayed, he did not suffer any financial strain, and he points to no specific instances leading to emotional distress or harm to reputation.

Mr. Taylor's claim also fails on causation.  *See Garrett*, 2006 WL 2850499, at *11 (plaintiff could not show causation for emotional distress damages because he "offered no facts proving his alleged damages were actually caused by any inaccuracies contained in his credit report rather than being caused by the stress of going bankrupt or losing his home business").

*Even if* Mr. Taylor could pursue his emotional distress injury, he provides no facts connecting that injury to the incorrect criminal report sent by Selection.  If anything, he

12

provides non-conclusory statements attributing the cause of his emotional distress to other factors. Both Mr. Taylor and his wife testified that the time between his April 6 offer from TQL and his on-time start date was stressful because his wife was moving to the United States and he was changing jobs. (Doc. 14-1, Ex. 2, Taylor Dep. 84:21, 119:12-121:7; Doc. 14-1, Ex. 2, Anebri Dep. 33:22:35:2). Although this stress may have been real, Mr. Taylor's testimony, taken in light most favorable to him, indicates it was not caused by Selection's inaccurate report.

Accordingly, Mr. Taylor's § 1681e(b) fails on both the third and fourth elements.

Along with failing on actual damages and causation, Mr. Taylor also cannot raise Selection's conduct to a willful violation of § 1681e(b). According to Mr. Taylor, Selection is "fully aware" its criminal background check procedures cause inaccuracies for individuals with common names but fails to employ more accurate procedures such as using a middle initial or social security number. (Doc. 15 at 11). However, Mr. Taylor fails to acknowledge that Selection implements procedures to verify the individual and the criminal records. (Doc. 14-1 at ¶¶ 9–10). Selection also corrected Mr. Taylor's report one day after it received notice of the dispute. (Doc. 14-1 at ¶¶ 38–40). *See Smith*, 837 F.3d at 611 (finding district court should have granted judgment as a matter of law on willful claim because consumer reporting agency's low dispute rate and procedure to quickly correct mistakes cannot support a finding of willfulness). Thus, although Selection may have provided an incorrect report, "it did not result from [Selection's] disregarding a high risk of harm of which it should have known." *Id*.

13

Accordingly, Selection is entitled to judgement as a matter of law on Mr. Taylor's negligent and/or willful § 1681e(b) claim.

### 2.  15 U.S.C. § 1681k

Arising under § 1681k of the FCRA, Plaintiff's second cause of action asserts that Selection either willfully or negligently failed to provide contemporaneous notice of the reported criminal conviction to him at the same time it provided the report to TQL.  This section of the FCRA provides:

> A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall—
>
> (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or
>
> (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

15 U.S.C. § 1681k.

As with his other claim, Mr. Taylor cannot prove actual damages and causation in this case to support his negligent violation.  As discussed at length, Mr. Taylor's

14

conclusory statements cannot establish actual emotional distress or harm to reputation damages. What is also troubling on Mr. Taylor's § 1681k claim is causation.

It is undisputed that TQL could view Mr. Taylor's initial criminal background search collected by Selection on April 7, 2016; Selection provided a full background report to TQL on April 11, 2016; and Mr. Taylor received notice of the potentially adverse information on April 11, 2016. (Doc. 14-1 at ¶¶ 23–24).

However, even if Selection was required under the statute to send notice on April 7,[5] Mr. Taylor did not know TQL had seen the criminal background search, nor does Mr. Taylor suggest as such. No reasonable juror could conclude that Mr. Taylor suffered emotional distress damages caused by that four-day delay during which he did not know that TQL had seen the criminal background search. *See, e.g., Kaplan*, 2010 WL 2163824, at *6 (plaintiff could not establish emotional distress for negligent violation of consumer reporting agency's one-day delay in violation of § 1681i).

Mr. Taylor also cannot raise Selection's conduct to a willful violation of § 1681k. He argues that Selection's procedures of providing notice once the entire consumer report is provided to the user recklessly disregards the need for notice to be sent at the same time criminal records may be viewed by the user. (Doc. 15 at 13–14). Selection contends that its procedure of sending notice to the consumer at the same time the full

---

[5] The Court is not deciding the appropriate interpretation on the timing element of § 1681k(a) and whether, under the statute, Selection was required to issue notice to Mr. Taylor as soon as it started collecting information for its report.

report is sent to the user is objectively reasonable given the lack of authority interpreting § 1681k. (Doc. 16 at 26). The Court agrees.

The statute does not provide clear guidance as to at what point in the consumer report generating process, the consumer reporting agency must send notice to the consumer to comply with § 1681k(a). The statute, as last amended in 1998, does not consider the realities of today in which an employer user may be able to quickly log-in to a consumer reporting agency's system and view aspects of the report as it is being generated. There is little guidance on the literal application of § 1681k(a)(1); however, a case cited by Selection is persuasive. *Henderson v. Trans Union, LLC*, No. 3:14-CV-00679-JAG, 2017 WL 1734036, at *3 (E.D. Va. May 2, 2017).

In *Henderson*, the consumer reporting agency sent notice to consumers via mail, starting the process of generating the letter to the consumer at the time it concluded a consumer report would include public record information. *Id*. at *2. The Eastern District of Virginia concluded that the agency's interpretation of § 1681k(a)(1) was objectively reasonable given the statutory text did not provide clear guidance on the mechanics of § 1681k(a)(1) and administrative guidance permitted agencies to send notice via mail, even if this interpretation led to employer users receiving the report days before the consumer via email. *Id*. at *2–*3. Thus, although best practice may be for "technological symmetry" between users and consumers, § 1681k(a)(1) does not require this, and "[s]uch a reading would impermissibly add language to the statutory text." *Id*. at *4.

Considering the foregoing, the Court cannot conclude that Selection's interpretation of § 1681k(a)(1) was objectively unreasonable. Although providing consumer access to the reporting agency's system at the same time it provides access to the user may allow for "technological symmetry," the FCRA does not require this, and the Court declines to add this language to the statutory text. Selection sent Mr. Taylor notice on April 11, 2016 via email when it sent its full consumer report to TQL. The undisputed documents cited by both Selection and Mr. Taylor show that Selection was continuing its search into Mr. Taylor's criminal background between April 7 and April 11, verifying the information pulled. (Doc. 14-1, Ex. 1c; Doc. 15-1, Ex. A). It was not objectively unreasonable for Selection to send Mr. Taylor notice once the verified full report was sent to TQL.

Accordingly, Selection is entitled to judgment as a matter of law on Mr. Taylor's negligent and/or willful § 1681k claim.[6]

### IV. MOTION FOR SANCTIONS

Selection also requests this Court to impose sanctions for false claims asserted by Mr. Taylor during the litigation. (Doc. 17). Selection asserts that Mr. Taylor falsely claimed he was delayed employment with TQL because of the background check, causing him financial strain, lost wages, and needing to borrow money from his parents. (*Id*. at 1). Selection argues these false claims caused it to incur unnecessary costs. Selection asks this Court to: (1) dismiss all Mr. Taylor's claims, (2) order Mr. Taylor to

---

[6] Because the Court finds Mr. Taylor notice claim fails as a matter of law under § 1681k(a)(1), it need not reach whether Selection had strict procedures in place under § 1681k(a)(2).

pay discovery costs and attorney fees incurred by Selection for the unnecessary resources spent on Mr. Taylor's false claims, and (2) costs associated with preparing the motion for sanctions. (*Id.*)

Mr. Taylor responds that his claims for lost wages and financial hardship were timely dropped after discovery showed no delay in his employment with TQL, thus sanctions are inappropriate. (Doc. 20 at 3). Mr. Taylor also contends Selection engaged in discovery abuses by issuing subpoenas to former employers and violated the protective order by failing to redact or file certain documents under seal. (*Id.* at 9–10).

As set forth in further detail below, the Court finds sanctions warranted in this case for Mr. Taylor's meritless claims for lost wages and financial hardship that were pursued throughout this litigation with improper purpose. The Court declines to find that Selection engaged in discovery abuses by issuing subpoenas to Mr. Taylor's employers because Mr. Taylor put that issue in dispute by alleging his employment was delayed. The Court also finds Selection's failure to redact documents as moot, given Selection has fixed any redaction issues.

### A. Findings of Fact Related to Motion for Sanctions

Mr. Taylor filed his complaint in the instant action on April 2, 2018. (Doc. 1). He alleged that his employment with TQL was "significantly delayed in whole or substantial part" because of Selection's inaccurate reporting. (*Id.* at ¶ 14). On September 4, 2018, this Court entered a calendar order, setting the deadline for the close of discovery as February 1, 2019. (Doc. 10). On September 28, 2018, Mr. Taylor asserted in his initial disclosures "actual damages for denied or delayed employment." (Doc. 20 at

14).[7]  On January 7, 2019, Mr. Taylor verified discovery responses, again asserting his employment was delayed in whole or in part and directing Selection to his initial disclosures for damages claims.  (*Id*. at 23–24).  On January 10, 2019, the Court extended the discovery deadline to March 29, 2019.  (Notation Order, Jan. 10, 2019).

Mr. Taylor was deposed on February 27, 2019.  (Doc. 20 at 31).  At his deposition, Mr. Taylor testified that he faced financial hardship due to the delay in employment with TQL, and, because of the financial strain, he was required to take a loan from his parents.  (Doc. 17 at 13-14; Doc. 15-1, Ex. 2, Taylor Dep. 125:15-126:5).  Because of Mr. Taylor's testimony, Selection served a second set of discovery requests on March 20, 2019, seeking Mr. Taylor's bank records.  (Doc. 17-2, Ex. 5-A).[8]

On March 21, 2019, Mr. Taylor received documents from Selection in response to a subpoena issued to TQL.  (Doc. 20 at 3).  Those documents included Mr. Taylor's pay stubs with TQL, showing he received wages from TQL starting April 25, 2016 – the original start date in his offer letter from TQL.  (*Id.*; Doc. 17-2 at 35).  Document discovery also showed his last "pay status" day with his former employer, the United States Postal Service, was April 22, 2016.  (Doc. 17-2 at 36).

---

[7] Amada Brewster, a recruiting coordinator at TQL, submitted an affidavit signed August 9, 2016, declaring Mr. Taylor's start date was April 25, 2016.  (Doc. 17-1).  It is unclear when this document was shared with Plaintiff.

[8] The Court notes that the certificate of service for these discovery requests is dated November 20, 2018.  However, Mr. Taylor does not dispute that the requests were actually sent in March 2019.

On March 29, 2019, the parties came before this Court for an informal discovery conference, disputing multiple categories of discovery, including Mr. Taylor's bank records because of his lost wages and financial hardship claims. (Minute Entry and Notation Order, March 29, 2019). The Court recommended that Mr. Taylor produce his bank records. (*Id*.). The Court also granted a 30 day extension, extending the discovery deadline to April 28, 2019. (*Id*.).

Because Mr. Taylor testified to his financial strain and needing to borrow money from his parents, Selection scheduled his parents' depositions for May 23, 2019. (Docs. 18 and 19). The morning of May 23, Mr. Taylor's counsel informed Selection's counsel that Mr. Taylor would be withdrawing his claims for lost wages, financial hardship, or having borrowed money from his parents. (Doc. 17-2 at 2, ¶ 6). Mr. Taylor's counsel confirmed this via email the following day. (Doc. 20 at 19). The Court granted a final request to extend discovery to June 12, 2019. (Notation Order, May 29, 2019).

### B.    Law and Analysis

Selection asserts that this Court should impose sanctions on Mr. Taylor pursuant to its inherent authority for his bad faith conduct at his deposition and falsely pursing claims for lost wages and financial hardship. However, the Court first "should ordinarily consider whether 'the conduct could also be sanctioned under [a] statute or the Rules [of Civil Procedure]." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 514 (6th Cir. 2002) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 31, 50 (1991)).

Selection does not cite any specific rules under which Mr. Taylor should be sanctioned; however, Selection suggests that there are issues with Mr. Taylor's pleadings

(Rule 11) and discovery (Rule 37) related to his claims for lost wages and financial hardship.

### 1. Applicable Rules

"As to the availability of Rule 11 of the Federal Rules of Civil Procedure, that rule affords the district court the discretion to award sanctions when a party submits to the court pleadings, motions or papers that are presented for an improper purpose, are not warranted by existing law or a nonfrivolous extension of the law, or if the allegations and factual contentions do not have evidentiary support." *First Bank*, 307 F.3d at 510 (citing Fed. R. Civ. P. 11(b)(1) through (3)). Rule 11 "applies primarily to pleading and papers," and "requires a showing of "objectively unreasonable conduct." *Id.* at 517. Rule 11 is unavailable where a moving party fails to serve a timely "safe harbor" letter, providing the offending party twenty-one days to correct before the motion for sanctions is before the court. *Id.* at 511 (citing *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir.1997)). *See also, id.* (sanctions could not be awarded under Rule 11 because moving party did not meet procedural requirements of Rule 11).

Rule 37 considers discovery violations. Under that Rule, the Court may consider sanctions, including fees, for a party's failure to comply with discovery in accordance with other discovery rules. Fed. R. Civ. P. 37(c). "The provision in Rule 37(c)(1)(A) allowing a court to order payment of the reasonable expenses, including attorney's fee is limited to expenses 'caused by the failure to comply with discovery orders.'" *Whitacre v. Plastipak Packaging, Inc.*, No. 3:04-CV-233, 2009 WL 10710231, at *2 (S.D. Ohio Jan.

5, 2009) (citing *First Bank*, 307 F.3d at 517 n. 13). "This sanction is utilized to recompense the costs associated with drafting of motions necessary to enforce it." *Id.*

Rule 11 does not apply because Selection did not serve a timely safe harbor letter providing Mr. Taylor with time to correct any pleadings and papers asserting lost wages or financial hardship. Rule 37 also does not apply. There is no evidence Mr. Taylor failed to comply with a Court order related to discovery, nor does Selection seek sanctions based on Mr. Taylor's non-compliance with discovery rules or orders. Selection's concerns also go beyond Rules 11 and 37, dealing with Mr. Taylor's responses to discovery, testimony at his deposition, and meritless assertion that he suffered lost wages and financial strain caused by Selection's inaccurate reporting. This leads the Court to consider its inherent authority to order sanctions.

### 2. The Court's Inherent Authority

Federal courts possess certain "inherent powers," not conferred by rule or statute, "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). This includes sanctioning a party when it litigates "in bad faith, vexatiously, wantonly, or for oppressive reasons." *First Bank*, 307 F.3d at 512. "This court uses 'improper purpose' and 'bad faith' interchangeably." *Id.* at 345 (citing *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 752 (6th Cir. 2010)). An action merely without merit is not bad faith or improper purpose. "Rather, there must be 'something more,' like fraud on the court, improper use of the court, harassment, delay, or disruption of litigation." *United States*

*ex rel. Tingley v. PNC Fin. Servs. Grp., Inc.*, 705 F. App'x 342, 344–45 (6th Cir. 2017) (citing *BDT Prods.*, 602 F.3d at 753–54).

To impose sanctions under this inherent power, the district court must make actual findings of fact that "(1) the claims advanced were meritless, (2) counsel knew or should have known that the claims were meritless, and (3) the suit was brought for an improper purpose." *Id.* (citing *Williamson v. Recovery Ltd. P'ship*, 826 F.3d 297, 301–02 (6th Cir. 2016)). When sanctions are imposed under the Court's inherent authority, "the court should give 'fair notice and an opportunity for a hearing on the record.'" *Id.* (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)). "The court's 'inherent powers must be exercised with restraint and discretion,' utilized only when 'the conduct of a party or an attorney is egregious.'" *Id.* (quoting *First Bank*, 307 F.3d at 516).[9]

The Court finds sanctions are warranted in this case under its inherent authority. First, the lost wages and financial hardship claims advanced by Mr. Taylor were meritless. As the clear facts show, Mr. Taylor was never truly unemployed or without pay – his pay status with the USPS ceased on Friday, April 22, 2016 and his pay status with TQL started on Monday, April 25, 2016. (Doc. 17-2 at 35–36). This Court, nor any reasonable person, could conclude that this one weekend constituted a "significant delay in whole or substantial part" as alleged in Mr. Taylor's complaint (Doc. 1 at ¶ 14), or

---

[9] Mr. Taylor does not argue that he was not provided fair notice or an opportunity for a hearing on the record. He further directly responds to Selection's argument that inherent authority is necessary in this case. Thus, the Court finds Mr. Taylor has been provided with fair notice and opportunity. *See, e.g., Tingley*, 705 F. App'x at 345 fn. 3, 346 (notice satisfied with moving party's brief and nonmoving party did not argue it lacked opportunity for hearing).

"actual damages for denied or delayed employment" as asserted in Mr. Taylor's initial disclosures.  (Doc. 20 at 23–24).  Thus, any claims of lost wages or financial hardship, including Mr. Taylor's false testimony that he had to borrow money from his parents because of financial strain, are meritless.

Second, counsel knew or should have known that the claims were meritless.  Upon the filing of his Complaint, counsel certified to this Court that, after a reasonable inquiry, Mr. Taylor's claims were not being presented for improper purposes and that Mr. Taylor's factual contentions – including his "significant delay" in employment – had evidentiary support or would likely after reasonable discovery.  Fed. R. Civ. P. 11(b).

This is not a case where Mr. Taylor would need discovery from Selection, TQL, or another non-party to support his factual contentions.  Mr. Taylor and his counsel, with any reasonable inquiry, were in possession of a plethora of information needed to determine whether lost wages and financial hardship had any merit: Mr. Taylor was sent the April 6 offer letter from TQL indicating an April 25 start date; Mr. Taylor had access to his own bank records, which would indicate financial strain; Mr. Taylor had access to his own parents, the people he asserted he borrowed money from due to his financial strain; Mr. Taylor experienced his last day with the USPS and start day with TQL.

The Court makes clear that it is not suggesting that Mr. Taylor, his counsel, or any plaintiff is required to complete a full-fledged discovery effort before initiating a lawsuit.  However, counsel is required "to conduct a reasonable investigation and uncover evidentiary support for fact allegations before filing the complaint."  *Johnson v. Moseley*, 790 F.3d 649, 656 (6th Cir. 2015) (citing Fed. R. Civ. P. 11(b)(3)).  Given the

information available to Mr. Taylor, a reasonable investigation should have shown that Mr. Taylor's employment with TQL was not delayed at all, let alone "significantly delayed in whole or in substantial part" by Selection's inaccurate report.

Further, even if Mr. Taylor was mistaken at the time of initiating his lawsuit on his official start date with TQL, reasonable discovery should have shown the claim was meritless. It is the plaintiff's burden to prove his case. Yet, it was not until not until *after* Selection sought significant discovery into Mr. Taylor's employment and financial records and *after* the parties came before this Court with a discovery dispute over Mr. Taylor's financial records, that Mr. Taylor withdrew his meritless claims for lost wages and financial hardship. The Court cannot find it reasonable that it took until the conclusion of discovery for Mr. Taylor to discover the own falsehoods in his complaint, his claims, and his deposition testimony.

Third, the claims for lost wages and financial hardship were brought and continued throughout the litigation in bad faith. Counsel and Mr. Taylor had the opportunity for a year during the litigation to confirm his claims. Either Mr. Taylor and counsel knew Mr. Taylor's start date with TQL was not delayed and his lost wages and financial hardship claims had no merit, and chose not to withdraw it, *or* failed to take any reasonable steps to uncover evidentiary support for his factual allegations.

These bad faith claims continued through Mr. Taylor's deposition, when he testified to a gap in employment and needing to borrow money from his parents because of Selection's inaccurate reporting. This "forc[ed] the unnecessary expenditure of time and resources to defend against frivolous and baseless claims" by Selection's continued

discovery into Mr. Taylor's financial records and taking depositions of Mr. Taylor's parents. *Tingley*, 705 F. App'x at 347 (citing *Metz v. Unizan Bank*, 655 F.3d 485 (6th Cir. 2011)). "The lack of merit of this claim, combined with this further act increasing the cost of litigation, [is] sufficient to warrant the imposition of sanctions." *Id.*

In response, Mr. Taylor asserts there is no bad faith because counsel "promptly informed counsel for Selection that Plaintiff no longer intended to claim lost wages or financial hardship," after considering records from TQL showing there was no delay in employment or lost wages. (Doc. 20 at 3). The Court disagrees.

Plaintiff's counsel orally informed Selection's counsel that Mr. Taylor was withdrawing his lost wages and financial hardship claims the morning of May 23, 2019 – the day of his parents' depositions. (*Id.* at 19). However, as late as March 21, 2019, Plaintiff's counsel had Mr. Taylor's TQL pay stubs. (*Id.* at 3). These records, obtained through defense counsel's work, clearly evidenced Mr. Taylor's wages and employment were not delayed. (*Id.* at 3). Thus, notwithstanding Plaintiff's own failure to secure evidentiary support for his factual allegations, it was Mr. Taylor and his counsel who caused the delay and unnecessary expenses, including the parents' depositions, Selection's discovery into Mr. Taylor's financial records, *and* the March 29, 2019 discovery dispute before this Court in-part related to Mr. Taylor's bank records. (*Id.*).

### 3. Appropriate Sanctions

Because sanctions are appropriate in this case, the Court must determine *what* sanctions are appropriate. Selection suggests dismissal of Mr. Taylor's case is warranted;

however, this is an extreme remedy ill-suited for the level of misconduct in this case. The Court's denies this request.  Instead, fees are appropriate.

A "fee award may go no further than to redress the wronged party for losses sustained; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Goodyear*, 137 S. Ct. at 1186.  In other words, Selection is only entitled to recover fees that would not have occurred "but-for" Mr. Taylor's misconduct. In this instance, Selection is only entitled to recover fees related to litigating Mr. Taylor's false claims for lost wages and financial hardship due to delayed employment with TQL.

Accordingly, Selection is ordered to file a statement establishing the fees and expenses Selection seeks to recover that were: (1) incurred due to the bad faith misconduct described in this opinion; and (2) reasonable and necessary.

## V.  MOTION TO COMPEL

Selection also moves to compel Mr. Taylor's mother to respond to a subpoena pursuant to Rule 45.  (Doc. 17).  Having granted Selection's motion for summary judgment, Selection's motion to compel is moot.

## VI.  CONCLUSION

Based upon the foregoing, Selection's motion for summary judgment (Doc. 14) is **GRANTED**.  Selection's motion for sanctions (Doc. 17) is **GRANTED IN PART**. Selection's motion to compel (Doc. 17) is **MOOT**.  Within 21 days of this order, Selection shall file a statement establishing the fees and expenses Selection seeks to recover that were: (1) incurred due to the bad faith misconduct described in this opinion; and (2) reasonable and necessary.

**IT IS SO ORDERED.**

Date:  1/27/2021

_s/Timothy S. Black_
Timothy S. Black
United States District Judge